## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| FEDOR SAFONOF, | : | |
| | : | |
| Plaintiff, | : | Hon. Joseph H. Rodriguez |
| | : | |
| v. | : | Civil Action No. 19-07523 |
| | : | |
| DIRECTSAT USA, SUBSIDIARY OF | : | |
| UNITEK GLOBAL SERVICES, INC. | : | **OPINION** |
| | : | |
| Defendant. | : | |

This matter is before the Court on Defendant's Motion to Dismiss Plaintiff's Amended Complaint for failure to state a claim under the New Jersey Conscientious Employee Protection Act. For reasons that follow, Defendant's Motion to Dismiss will be denied.

### I.        FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This is the second time the Court considers whether Plaintiff's Complaint sufficiently sets forth claims under the New Jersey's Conscientious Employee Protection Act, N.J. Stat. Ann. § 34:19-1, *et seq.*, ("CEPA").  In an Opinion and Order issued on March 31, 2020, the Court agreed with Defendant that Plaintiff's Complaint failed to state a claim because it did not properly establish the first element of the prima facie case; namely that Plaintiff reasonably believed that his employer's conduct violated a law, rule, or regulation. Specifically, Defendant argued that the Complaint neither alleged the specific statutory provisions Plaintiff believed Defendant violated, nor demonstrated a substantial nexus between Defendant's conduct and the supposed violations. (Id. at 8-11.) As a result, the Motion to Dismiss granted with leave to amend the Complaint. [Dkt.

No. 35 at 7-10.] Plaintiff timely filed an Amended Complaint [Dkt. No. 38] and the present motion followed. [Dkt. No. 39.]

Defendant raises the identical issues considered in the first motion to dismiss and argues that Plaintiff's Amended Complaint be dismissed with prejudice for failure to state a claim pursuant to Fed. R. Civ. P. 12 (b)(6).

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a claim based on "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint should be dismissed pursuant to 12(b)(6) if the alleged facts, taken as true, fail to state a claim. Fed. R. Civ. P. 12(b)(6). It is not necessary for the plaintiff to plead evidence. Bogosian v. Gulf Oil Corp., 561 F.2d 434, 446 (3d Cir. 1977). The question before the Court is not whether the plaintiff will ultimately prevail. Watson v. Abington Twp., 478 F.3d 144, 150(2007). Instead, the Court simply asks whether the plaintiff has articulated "enough facts to state a claim of relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility[1] when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556).

Nevertheless, the Court need not accept "unsupported conclusions of unwarranted inferences," Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007)

---

[1] This plausibility standard requires more than a mere possibility that unlawful conduct has occurred. "When a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id.

2

(citation omitted), however, and "[l]egal conclusions made in the guise of factual allegations...are given no presumption of truthfulness," Wyeth v. Ranbaxy Labs., Ltd., 448 F. Supp. 2d 607, 609 (D.N.J. 2006) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)); see also Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005) ("[A] court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss.")). Further, although "detailed factual allegations" are not necessary, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Twombly, 550 U.S. at 555 (internal citations omitted); see also Iqbal, 556 U.S. at 678. Thus, a motion to dismiss should be granted unless the plaintiff's factual allegations are "enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true (even if doubtful in fact)." Twombly, 550 U.S. at 556.

Furthermore, Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Pursuant to Rule 9(b), a plaintiff must plead "with particularity 'the circumstances of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior.'" Lum v. Bank of Am., 361 F.3d 217, 223-24 (3d Cir. 2004) (quoting Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984)).

There are two ways to satisfy the particularity requirement. See Lum, 361 F.3d at 224. First, a plaintiff may plead the "date, place or time" of the fraudulent act. Id. (quoting Seville, 742 F.2d at 791) (internal quotations omitted). Second, a plaintiff may use "alternative means [to] inject [] some measure of substantiation into their allegations of fraud." Id. (internal quotations omitted). Still, the plaintiff must plead enough to substantiate the allegations of fraud being made and may not rely on "conclusory statements." NN&R, Inc. v. One Beacon Ins. Group, 362 F. Supp. 2d 514, 518 (D.N.J. 2005) (quoting Mordini v. Viking Freight, Inc., 92 F. Supp. 2d 378, 385 (D.N.J. 1999)). At a minimum, a plaintiff "must allege who made a misrepresentation to whom and the general content of the misrepresentation." Lum, 361 F.3d at 224. Significantly, the heightened pleading standard required by Rule 9(b) applies to claims of fraud brought under New Jersey law. Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007).

## III.   DISCUSSION

As set forth in the Court's Opinion of March 31, 2020, New Jersey resident Fedor Safonof ("Plaintiff") brings this action under the CEPA against his former employer, DirectSat USA ("Defendant"), for negative employment action taken against him after his refusal to comply with his manager's allegedly illegal schemes. [Dkt. No. 1-A, Ex. A (Compl.).] Defendant is a cable company that supplies DirecTV customers with services such as installations and repairs. Plaintiff was hired by Defendant in 2012 as a field supervisor. He worked in the Pennsauken location, and consistently met employment expectations until 2017. (Id.)

In October 2017, Jose Gonzalez became Plaintiff's general manager. (Id. at ¶ 4.) Gonzalez was supposedly hired to combat what the company called "Sin30s," or repeat customer complaints received within thirty days of the initial service. (Id. at ¶ 5.) Plaintiff alleges that to accomplish this goal, Gonzalez accessed customers' account information without their consent, and transferred it to a spreadsheet on his personal laptop. (Id. at ¶¶ 6-8.) He used that information to cancel "Sin30s." (Id. at ¶ 8.) On a separate company calendar, Gonzalez then assigned supervisors, like Plaintiff, to handle the repairs, requiring them to send technicians out to complete the job off the record. (Id. at ¶¶ 8-9.) The technicians were not paid because after Gonzalez's tampering, no physical record of the technician's work order existed for the technician to bill. (Id. at ¶ 10.) Without their consent, Gonzalez also transferred customers' phone numbers from Defendant's online database into a mass-texting application called "Texedly," from which he texted customers about their service, apparently to prevent any "Sin30" appointments from being created. (Id. at ¶ 11). Plaintiff informed Gonzalez that he objected to this behavior and believed that it was unlawful. (Id. at ¶ 13.)

Gonzalez eventually instructed his subordinates, including Plaintiff, to directly participate in cancelling appointments. (Id. at ¶ 14.) Plaintiff refused and called a Human Resources manager, "Kathy," to complain about Gonzalez's behavior, but was instructed to address the issue with Gonzalez directly. (Id. at ¶¶ 15, 37.) Plaintiff alleges that immediately following his complaint, Gonzalez began subjecting him to retaliatory discipline and harassment, culminating in his ultimate termination. (Id. at ¶ 16.)

The Court found that the original complaint was deficient in that it lacked factual specificity to establish a substantial nexus between the alleged conduct and the

supposed violations. The original Complaint did not plainly specify the ways in which the law was violated and included "a laundry list" of nine statutes followed by the conclusory statement that Defendant's actions violated all of them as well as common law fraud.  The Complaint did not sufficiently link Gonzalez's behavior to the offenses or describe the statutes in any way and failed to identify the public harm caused or public policy violated.

The motion to dismiss was granted with leave to amend the complaint. Defendants claim that Plaintiff's Amended Complaint again falls short of establishing a prima facie case under the CEPA because it does not sufficiently allege that he had a reasonable belief that the alleged scheme was a violation of law, rule, or regulation with requisite factual detail. The Court disagrees.

CEPA was enacted to encourage employees to report unethical or illegal activity in the workplace and protect those who do from an employer's retaliation in response. Dzwonar v. McDevitt, 177 N.J. 451, 462 (2003). Under the CEPA, "[an] employer shall not take any retaliatory action against an employee because the employee...[o]bjects to, or refuses to participate in any activity, policy or practice which the employee believes (1) is in violation of a law, or a rule or regulation promulgated pursuant to law...; (2) is fraudulent or criminal...; or (3) is incompatible with a clear mandate of public policy concerning the public health, safety, or welfare or (3) is incompatible with a clear mandate of public policy concerning the public health, safety, or welfare or protection of the environment." N.J. Stat. Ann. § 34:19-3(c).

To meet the burden of establishing a prima facie case pursuant to N.J.S.A. 34:19-3c, a plaintiff must show that "(1) he or she reasonably believes that his or her

employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he or she performed a "whistle-blowing" activity described in N.J.S.A. 34:19–3c; (3) an adverse employment action was taken against him or her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action. Dzwonar, 177 N.J. at 462.

Under the first prong, a plaintiff must identify a "statute, regulation, rule, or public policy that closely relates to the complained-of conduct." Id. at 463. The New Jersey Supreme Court and the lower courts agree that when the plaintiff fails to provide such law or public policy, the trial court should enter judgment in favor of the defendant. Id.; see also Mayorga v. Sonoco Prods. Co., Civil Action No. 3:12-cv-05067, 2013 WL 1792554, at *5 (D.N.J. April 16, 2013) (dismissing plaintiff's Complaint for failure to plead sufficient facts alleging a violation of law). However, a plaintiff who brings a claim pursuant to this statute need not show that his or her employer actually violated the law or a clear mandate of public policy. Dzwonar, 177 N.J. at 463. Rather, the plaintiff must demonstrate that he or she "reasonably believes" that a law or public policy was violated. Id.; see also Robert v. Autopart Int'l, Civil Action No. 3:14-cv-07266, 2015 WL 4031740 (D.N.J. June 30, 2015). In order to evaluate the plaintiff's claims, the trial court must make a threshold determination that there is a substantial nexus between the complained-of conduct and a law or public policy identified by the court or the plaintiff. Tegler v. Glob. Spectrum, 291 F. Supp. 3d 565, 581 (D.N.J. 2018). A "substantial nexus" is defined as a close relationship between the alleged misconduct and the law or public policy. Id.

The Court directed Plaintiff to include the specific provisions of laws violated commensurate with explanations of the potentially violated statutes; the Amended Complaint meets that directive. See Am. Compl., ¶¶ 63-117. Plaintiff sufficiently describes Defendants' conduct, his articulated objections to Gonzales's directives, and the relationship the objections bear on the timing of his discipline and termination.  The Amended Complaint goes further than detailing Plaintiff's moral objections to the purported "scheme" proffered by Plaintiff- it lays out facts that portend, if believed, unlawful access to customer accounts by using a false log-in identity, one that was not their own, and making designations to the account without the authorization of the customer for the purpose of bolstering sales performance.  In paragraphs 63-117 of the Amended Complaint, Plaintiff details the actions which he believes support numerous violations of the law, including Identity Theft, N.J.S.A. 56:8-161, 163, the Computer Fraud and Abuse Act, 18 U.S.C. 1030 (a)(2)(C), (a)(4), (a)(6)(A), (B), and the Telephone Consumer Protection Act, 47 U.S.C. 5227 (b)(1)(A)(iii).

As opposed to the original complaint, which simply listed the statutes and/or laws violated, the Amended Complaint sufficiently ascribes relevant conduct to the alleged violations.  Plaintiff claims that Gonzalez would impermissibly access the personal account information of customers through the DirecTV database and then save the information on a spreadsheet he titled "Hot Jobs." Am. Compl., ¶23.  Then, Gonzalez made a comparison to the upcoming "Sin" jobs that had been assigned to the DirectSat Pennsauken location. Id. at ¶24. When Gonzalez found a match, he would use his scheme to remove the "Sin" job and access to the customer's DirecTV.com portal. Id. at ¶25.  Gonzalez also used this information to cancel up-coming repair work order, or

Sin30, by accessing or creating an unauthorized "Sins" using the customer's online DirecTV.com account portal without the customer's consent or knowledge. Id. at ¶¶ 26-27. This method gave the impression that it was the customer, and not Gonzalez, who cancelled the job. Id.

The creation of the "Hot Jobs" spreadsheet and implementation of the cancellation scheme was required of Plaintiff, but he refused, believing the scheme was unlawful. Id. at ¶27. Plaintiff is not required to demonstrate that illegal activity occurred; he simply must show that he believed the conduct to be illegal. He has done that in the Amended Complaint. See e.g., ¶¶34, 63-117.

Plaintiff also sufficiently establishes a causal timeline which weaves his objections to Gonzales' order to engage in the scheme with the disciplinary action he endured and his ultimate termination. Plaintiff was never disciplined during his four and half years of employment until he refused to follow Gonzalez' scheme. Id. at ¶35. In late November 2017, Gonzalez held a meeting with Plaintiff and two other employees, Pierce and Bateman, to advise to access the customer accounts themselves and gave them a tutorial on accessing the DirecTV database, using Gonzalez's personal login and pass word. Gonzalez showed them how to go to DirecTV.com and create and access the customers' online account. At the conclusion of the meeting, Plaintiff explained to Gonzalez that he was not willing to participate. Shortly thereafter, in November 2017, Plaintiff met with the office administrator "Kathy" and told her he thought he would be fired. Id. at ¶¶36-37. He was fired two months later in February 2018.

Finally, the Court rejects Defendants' argument, at this stage, that the violative behavior is still solely of a private and not public concern. The alleged unauthorized

access to a customer's information and the performance of transactions without a customer's knowledge and/or consent are certainly a concern for a public increasingly dependent upon online commerce.  The Amended Complaint sufficiently alleges fraudulent conduct, temporal adverse employment actions, and requisite specificity to survive Defendants' motion to dismiss. Defendants' motion to dismiss will be denied.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss for failure to state a claim under the New Jersey's Conscientious Employee Protection Act, N.J. Stat. Ann. § 34:19-1, *et seq.* is denied.

Dated: December 3, 2020

s/ Joseph H. Rodriguez
Hon. Joseph H. Rodriguez,
UNITED STATES DISTRICT JUDGE